---

## SAME v. SAME.

Husband and Wife: CONVEYANCE TO WIFE. Where a husband in advanced years conveys property to his wife for the purpose of having it held in trust for him, and the wife, contrary to the intention of the husband, and in violation of the trust, conveys it to third parties, and with the proceeds thereof or with the money or property of the husband purchases other property and receives the title in her own name, upon their separation equity may require an accounting, and make such decree as to the property owned at the time of the decree as will protect the interests of both the husband and wife.

REHEARING of foregoing case.

*Harwood, Ames & Kelly,* for appellant.

*Lamb, Ricketts & Wilson,* for appellee.

REESE, J.

On motion of appellee a rehearing was granted and the case has been re-submitted upon able printed briefs and arguments filed by the respective parties.

There appear to be two material questions in the case, and to the discussion of which counsel have principally devoted their attention : *First.* Was the conveyance of the property of plaintiff to defendant in trust for any purpose ? and, *Second.* If so, what decree should be entered for the proper protection of the rights of the parties ?

It is claimed by defendant that the conveyance to her was a full and absolute conveyance of the title in fee, and that she holds it free from any rights or claims of plaintiff. That it was a voluntary conveyance and transfer, from the effects of which plaintiff cannot now escape.

We think this is clearly at variance with the intention of both parties, and wholly inconsistent with the purposes for which the transfer was made and received. Taking the testimony of defendant alone it is shown that soon after their marriage plaintiff, through some cause or other, which is immaterial here, concluded that his children were seeking to circumvent him and procure all his property. He made known this fact to defendant, and declared his purpose of putting it into the hands of some one from whom they could not get it. She says his plea was, " They had his money, and were bound he should not get it, and he seemed much hurt; says he, ' I am going to put the property in somebody's hands where the children cannot get it; the children have got all, or nearly all.' He proposed first to put it in my crippled daughter's hands. I objected very positively. Said he, ' I will put it into yours instead.' I said ' I am step-mother and don't want it.'" This is a sufficient quotation to show that there was no purpose to convey, and no expectation of receiving an indefeasible title. If this is the true version of the case, plaintiff was fearful he would lose his property, and for the purpose of *saving* it desired the title to be held by another. It was not prompted by love and affection for the wife, for his first impulse was to convey it to another, and had it not been for the positive objection referred to he, perhaps, would have done so. It could not have been intended as an advancement to the wife, for, as we have seen, he proposed conveying it to her daughter; besides, it is shown that at the time of the marriage it was agreed that each should retain their property.

It is true plaintiff testifies to a different state of facts,

and if he is correct it was defendant who became alarmed lest the children of plaintiff should get his property. For the purposes of the question now under consideration it is wholly immaterial as to which is the correct theory of the case. Either one establishes the theory of plaintiff as to the purpose with which the conveyances were made. Plaintiff was old, hard of hearing, and evidently, to some extent at least, in his dotage. Defendant, though only four years younger, was in the enjoyment of all her faculties, and evidently much his superior in that respect. That she understood the purpose for which the conveyance was made to her cannot be questioned.

The second question involved in the case is one of some uncertainty. It is apparent that the property of defendant has not been impaired and but little of her funds were exhausted while they cohabited together. It is also apparent that plaintiff has but little if any property left. As stated in the former opinion, the purchasers of the real estate who have in good faith invested their money cannot be disturbed. And, as claimed by defendant, it would be unjust to require her to account for all the money and property placed in her hands by plaintiff, since she has contributed, in part at least, out of those funds toward the maintenance of plaintiff and defendant. While it would seem to the writer to be going beyond the proper bounds of the court to render a decree requiring the payment of a certain sum of money, or in the event of her failure to sell her property upon execution for that purpose, and thus strip her in part of the necessary means of support, yet we think the trust fund can be followed into the real estate now owned by her and purchased therewith. It is insisted that the family expenses were paid out of the money and proceeds of property placed in the hands of defendant, and that it has thus been more than exhausted. This proposition should be given such weight as it is entitled to, but it can hardly be said that during the five years of

the married life of the parties their estates would so materially change in relative values by the proper use of the property of plaintiff in maintaining the husband and wife. The real estate owned by plaintiff and conveyed to defendant has been conveyed away by her, and other real estate purchased which appears to be of considerable value. It should not be required of defendant that she return to plaintiff all the property and money received, but common fairness and the principles of equity require that some return of this trust property be made. The testimony shows that lot No. four in block nine and the east half of block ten in Roggencamp's addition to Bennett are held by defendant, the title being in her name, but procured, in part at least, by the labor and money of plaintiff, and that there are three dwelling-houses thereon, but we are unable to determine the value of the several lots or to ascertain from the record upon which lots the buildings are located. If the parties can agree by stipulation as to the value of each lot with the improvements thereon, such decree will then be entered as will protect the rights of the parties, otherwise a reference will be ordered for the purpose of ascertaining the values.

JUDGMENT ACCORDINGLY.

THE other judges concur.